UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Cr. No. 01-396-01 (ESH) |
| v. | ) | |
| ABDUR MAHDI, | ) | |
| Defendant | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY**

The United States of America, by its attorney, the United States Attorney for the District of Columbia, hereby files this response to Defendant's Motion for Discovery ("Motion"). The defendant has classified his requests under the categories, "Curtis Hattley Homicide" and "Brady/Giglio."

As to the defendant's requests regarding the Hattley murder, the government has and will abide by its obligations under Brady. The defendant's other requests purporting to seek "discovery" relating to the Hattley murder either lack "good cause" or are burdensome and unwarranted. The discovery the defendant now seeks under the rubric Brady/Giglio information is not relevant to the ineffectiveness claim which is the subject of the pending hearing.   Moreover, the defendant's requests constitute a "fishing expedition" that goes well beyond what is allowable under the rules governing 28 U.S.C. § 2255, and the defendant has not demonstrated the requisite "good cause" to justify the discovery he seeks. Consequently, this Court should summarily deny the defendant's Brady/Giglio discovery requests.

In further support of its response, the government now says:

## I. RELEVANT BACKGROUND[1]

1. On October 17, 2011, the defendant filed a pro se motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   In support of his post-conviction motion, the defendant claimed that his conviction should be vacated because, among other things, his trial counsel provided ineffective assistance of counsel for not calling as an exculpatory defense witness a man named Jacob Vonderpool, who allegedly was an eyewitness to the murder for which the defendant was charged – i.e., the murder of Curtis Hattley.[2]

---

[1]   For a more complete statement of the procedural and factual history in this case, we refer the Court to the government's Opposition to defendant's 2255 motion.

[2]   The evidence at trial demonstrated that Mr. Hattley was killed as a result of the defendant's efforts to kill a young man named Zakki Abdul-Rahim.

Abdul-Rahim knew the Mahdi brothers through high school (6/16PM: 106). Abdul-Rahim moved in 1997 to Phoenix with his parents, but returned to Washington in the summer of 1998 (6/16PM: 104, 110-111).   One day that summer, the defendant, Joseph Hooker, and Abdul-Rahim were talking outside of the Missouri Market (6/16PM: 102-103). Abdul-Rahim had never had a problem with the defendant before this time (6/16PM: 118). Hooker thought that Abdul-Rahim disrespected the defendant (5/20AM: 65).   Hooker pulled out a knife and swung at Abdul-Rahim, but he did not stab him (Hooker 5/20AM: 68; Abdul-Rahim 6/16PM: 112-118).   Abdul-Rahim left, and he did not see the defendant and Hooker the rest of the summer (6/16PM: 110-120).   He then returned to college in Phoenix (6/16PM: 120).

In November 1999, Abdul-Rahim returned to the D.C. area (6/16PM: 120).   Pat Hackshaw, who bought drugs from the defendant, saw Abdul-Rahim (5/20AM: 76-80). Hackshaw told the defendant that Abdul-Rahim said that he was not finished with the Madhis (Hooker 5/20AM: 76-80).   Thus began the defendant's effort to kill Abdul-Rahim.

On November 17, 1999, the defendant and Hooker were driving with another associate, London Sanderson.   Sanderson saw Abdul-Rahim, but the defendant and Hooker did not have their guns with them (Hooker 5/20AM: 79-80).   Later that day, Sanderson again told the defendant that Abdul-Rahim just rode by (Hooker 5/20AM: 80-81).   At that time, Abdul-Rahim was giving Curtis Hattley (a.k.a. "Six") a ride home (6/16PM: 125; 6/23AM: 8).   Abdul-Rahim wanted to "squash" the beef with the Madhis and end the whole thing peacefully (6/16PM: 125-129).   Abdul-Rahim and Hattley drove down the block to try to find the defendant and talk to

2. On November 25, 2013, this Court issued its order summarily denying the defendant's claims, including alleged Brady/Giglio violations by the government, but granted the pending evidentiary hearing on defendant's ineffectiveness claim. See United States v. Mahdi, 999 F.Supp. 236 (D.D.C. 2013).

**3.** On October 10, 2014, the defendant filed the instant Motion for Discovery ("Motion").

**II. Argument**

**A. Legal Principles**

Pursuant to Section 2255 Rule 6, discovery may be conducted on a post-conviction motion only after the trial court, in its sound discretion, determines that there is "good cause" to allow the particular discovery. See 28 U.S.C. § 2255 Rule 6(a) (emphasis added); see also Stephens v. United States, 14 F.Supp.2d 1322, 1326 (N.D.Ga. 1998) (no discovery allowed where petitioner failed to "demonstrate good cause" required to obtain the interrogatories, requests for admission and depositions he sought); Hall v. United States, 1998 WL 842870, *16 (E.D.Va Dec. 1, 1998) (noting "[p]etitioner has no constitutional right to discovery" under Section 2255 and that

---

him (6/16PM: 129). The defendant got a .45-caliber gun and then ran down to the 1300 block of Sheperd Street, N.W. (Hooker 5/20AM: 81). Musa and Hooker also went to find Abdul-Rahim and were armed (Hooker 5/20AM: 82-86; Abdul-Rahim 6/23AM: 137; 6/24AM: 67). The defendant waited for Abdul-Rahim to drive by and then he fired multiple times at the car, killing Hattley (Hooker 5/20AM: 82-83; Abdul-Rahim 6/16PM: 130; 6/23PM: 23).

A bystander who lived on the block, emergency medical technician Arturo Contreras, witnessed the shooting. Contreras identified the defendant as the shooter; Contreras recognized the defendant from the neighborhood (6/23PM: 60-69).

The defendant traded the weapon that he used in the murder with another associate, Clarence Howard (aka "Radar") for a different gun (Hooker 5/20AM: 96). Sanderson told the group the next day that a guy named Six was killed in the shooting (5/20AM: 98). The defendant, Hooker, and other members of the group went to Hattley's funeral to see who might retaliate against them (5/20AM: 100-102).

petitioner "failed to demonstrate good cause for further discovery"). Good cause requires specificity as to the information sought.  See Bracy v. Gramley, 117 S.Ct. 1793, 1799 (1997) (citations omitted); Perillo v. Johnson, 79 F.3d 441, 444 (5th Cir. 1996) ("'conclusory allegations unsupported by specifics' . . . will not entitle one to discovery") (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); Stephens, 14 F.Supp.2d at 1326 (denying certain discovery where petitioner "d[id] not specify any reason why" the particular discovery was "need[ed]"); United States v. Guerin, 1998 WL 398249, *2 (E.D.Pa. June 23, 1998) ("Generalized statements about the possible existence of material do not constitute 'good cause.'") (citations omitted); United States v. Wesson, 1998 WL 30695, *3-4 (N.D.Ill. Jan. 22, 1998).   In the case of a challenge involving alleged Brady or Giglio violations, a petitioner must make at least a preliminary showing that the requested information is exculpatory or impeaching in nature in order to compel production.  See United States v. Roach, 28 F.3d 729, 734 (8th Cir. 1994); Hall, 1998 WL 842870 at *15; see also Guerin, 1998 WL 398249 at *1 (discovery denied where petitioner "neither demonstrates nor alleges that the requested discovery is necessary for [him] to establish his claims.").

Indeed, "[t]he Rules Governing Section 2255 do not authorize fishing expeditions[.]" United States v. Zuno-Arce, 25 F.Supp.2d 1087, 1117 (S.D.Cal. 1998) (emphasis added); see also Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) (citing Munoz v. Keane, 777 F.Supp. 282, 287 (S.D.N.Y. 1991) ("[P]etitioners are not entitled to go on a fishing expedition through the government's files in hopes of finding some damaging evidence."), aff'd 964 F.2d 1295 (2d Cir.), cert. denied, 506 U.S. 986 (1992)); Dziurgot v. United States, 923 F.2d 839 (1st Cir. 1990) (Table) ("[T]he district court acted within its discretion in declining to find good cause to permit [petitioner] to embark on a fishing expedition in the name of discovery."); See also United States v.

Bales, 1997 WL 825245, *8 (E.D.Pa. Dec. 19, 1997) ("[N]either under the standard of Rule 33 nor

under the standard of section 2255" is petitioner "justif[ied in] using this Court to mount a fishing

expedition in hopes that he will find something that supports his claims."). As one court has put

it, discovery under Section 2255 is unjustified where it is based on petitioner's "Dickensian hope

that 'something will turn up[.]'" Custis v. United States, 923 F.Supp. 768, 769 (D.Md. 1996).

### B. Defendant's Specific Discovery Requests Regarding Curtis Hattley Homicide

1. "All records related to the Curtis Hattley homicide that were turned over to defense counsel before trial as discovery material. At a minimum, petitioner needs copies of all discovery transmittal letters to determine whether any documents provided in discovery or made available to the defense are not among trial files turned over to undersigned counsel. Counsel has reviewed prior counsel's files, which are voluminous. But, despite multiple requests, prior counsel has failed to locate and turn over three boxes of files related to Mr. Mahdi's case. As a result, undersigned counsel cannot be certain that he has seen all materials made available to trial counsel." (Motion at 6).

**Government's Response:**

The materials the defendant seeks are not the proper subject of "discovery." Based on

information and belief, each discovery letter sent by the government to trial counsel was lodged on

the public docket and thus is available to the defendant in the clerk's office. If there is an issue

between current and former counsel regarding obtaining the defense trial file, the defendant should

seek an order from the Court to resolve the dispute. Thus, the Court should deny the defendant's

burdensome and unwarranted request that the government engage in a complete re-examination of

its extensive case file to provide the defendant with documents it already provided to trial counsel.

2. "Any statements, or any notes, memoranda, or other written or electronic recording, of any statement made by any person who was present in the vicinity of the shooting."

3. "Names and supporting identification information of all such persons interviewed, whether or not any written recording of the conversation took

place."

4. "Any information in the government's possession concerning any description of the alleged perpetrators of the shooting."

5. "Any statements, notes, memoranda or other written or electronic recording regarding Clarence Howard, aka Radar, including but not limited to any information supporting the theory that Howard was present in the vicinity of 14th and Shepherd Streets, NW on the night of November 17, 1999, and that he, not Abdur Mahdi, along with Hooker and Musa Mahdi shot at the vehicle in which the decedent was a passenger."

6. "Any instances in which Hooker, Abdul-Rahim, Arturo Contreras or any other individual investigators interviewed failed to identify Mr. Mahdi, or identified a person other than Mr. Mahdi, as the person who shot at the vehicle in which the decedent was a passenger."

7. "Anything required to be disclosed pursuant to Brady and its progeny."

(Motion at 6-7).

**Government's Response:**

To the extent that the defendant requests Brady information, the government is not aware of any undisclosed Brady information. As we continue to review our files in preparation for the hearing on the defendant's ineffectiveness claim, however, we will continue to abide by our obligations under Brady. The defendant's other requests are overbroad and amount to a mere "fishing expedition."

8. A list of every date between October 17, 2011 and the present on which prosecutors or law enforcement agents had contact with or attempted to have contact with cooperating witnesses or Arturo Contreras including the date, time, location, persons present in addition to the contacted individuals, any statements, notes, memoranda or other written or electronic recording about the contact. It is counsel's understanding that Assistant U.S. Attorney Michael Britten and another individual traveled to F.C.C. Petersburg in 2012 or 2013 in an unsuccessful effort to interview Hooker. In light of Mr. Mahdi's ineffectiveness claim, all such contacts with civilian witnesses who testified about the homicide are directly germane."

(Motion at 8).

**Government's Response:**

The defendant's unsupported and entirely speculative requests do not demonstrate the requisite "good cause" to justify discovery of whatever steps the government has taken and will take to investigate the defendant's claim of ineffectiveness. We disagree with defendant's conclusory and unsupported assertion that government contacts with witnesses are "directly germane" to his ineffectiveness claim. Moreover, the defendant's requests regarding alleged events taking place before he filed his motion in "2012 or 2013" are overbroad and irrelevant to the claim he first made in October 2013.

**B.  Defendant's Specific Discovery Requests Regarding "Brady/Giglio"**

> "A list of every date between November 15, 2001 and August 1, 2003 on which prosecutors or law enforcement agents had contact with the cooperating witnesses listed below, including dates on which the cooperator was transported from the facility where he was housed to another location but no direct contact actually occurred.   For each such contact, Petition (sic) requests the date, time, location, persons present in addition to the cooperator, any statements, notes, memoranda or other written or electronic recording about the contact.   The information is needed to identify the occasions on which cooperators have said they received conjugal visits and/or contraband, and circumstances surrounding those events.

> > a. Zakki Abdul-Rahim
> > b. James Hamilton
> > c. Joseph Hooker
> > d. Lorris Quashie
> > e. David Tabron

> To the extent any of the above requested documents are not in the possession or control of the government, petitioner requests permission to subpoena those documents from the appropriate custodians."

**Government's Response:**

This Court has already summarily denied defendant's Brady/Giglio claim. See

United States v. Mahdi, 999 F.Supp. at 244-46. The defendant's discovery requests are an obvious

attempt to circumvent that ruling without providing any new evidence or support.   Accordingly,

this Court should summarily deny defendant's new requests for discovery regarding alleged

Brady/Giglio information because defendant's requests are unsupported, speculative, and

constitute an undisguised "fishing expedition."


                                    Respectfully submitted,

                                    RONALD C. MACHEN JR.
                                    United States Attorney
                                    D.C. Bar No. 447-889

                                    _____/s/_____
                                    LESLIE ANN GERARDO
                                    Assistant United States Attorney
                                    Chief, Special Proceedings Division
                                    D.C. Bar No. 419-823


                                    _____/s/_____
                                    JAMES SWEENEY
                                    Assistant United States Attorney
                                    Special Proceedings Division
                                    D.C. Bar No.   427-217
                                    555 4th Street, N.W.
                                    Washington, DC 20530
                                    (202) 252-7564
                                    James.Sweeney@usdoj.gov