UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) )  ) | |
| v. | ) ) | Criminal No. 01-0396 (PLF) |
| ABDUR R. MAHDI, | ) ) | Civil Action No. 20-0822 (PLF) |
| Defendant. | ) ) ) | |

OPINION

Pending before the Court is defendant Abdur R. Mahdi's Motion to Vacate, Set

Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Dkt. No. 966], as amended by his

Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255 Based on Johnson, Dimaya,

and Davis ("Def. Mot.") [Dkt. No. 979].[1]  Mr. Mahdi argues that his six convictions under 18

U.S.C. § 924(c) are unconstitutional and must be vacated in light of the Supreme Court's rulings

---

[1]        The documents that the Court has reviewed in connection with the pending
motion include:  Retyped Indictment ("Indictment") [Dkt. No. 444]; Judgment [Dkt. No. 580];
Transcript of Sentencing [Dkt. No. 671]; Motion to Vacate, Set Aside, and/or Correct Sentence
Pursuant to 28 U.S.C. § 2255 ("Def. Mot. to Vac.") [Dkt. No. 856]; Memorandum Opinion dated
November 25, 2013 ("Mem. Op. 1") [Dkt. No. 880]; Memorandum Opinion dated March 24,
2016 ("Mem. Op. 2") [Dkt. No. 946]; Motion to Vacate Judgment Pursuant to Fed. R. Civ. P.
§ 60(b)(6), and Motion to Reopen 28 U.S.C. § 2255 Proceeding in Light of Buck v. Davis
[Dkt. No. 951] ("Second Def. Mot. to Vac."); Application for Leave to File a Second or
Successive 28 U.S.C. § 2255 Motion [Dkt. No. 966]; United States Court of Appeals Order dated
March 17, 2020 ("D.C. Cir. Order") [Dkt. No. 965]; Memorandum Opinion and Order dated
August 19, 2020 ("Mem. Op. 3") [Dkt. No. 967]; Response to Court Order [Dkt. No. 978];
Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255 Based on Johnson, Dimaya,
and Davis ("Def. Mot.") [Dkt. No. 979]; United States' Opposition to Defendant's Supplemental
Motion to Vacate Judgment Under 28 U.S.C. § 2255 Based on Johnson, Dimaya, and Davis
("Gov't. Opp.") [Dkt. No. 993]; Reply in Support of Supplemental § 2255 Motion ("Def.
Reply") [Dkt. No. 995]; Notice of Additional Authority [Dkt. No. 996]; and Notice of
Supplemental Authority [Dkt. No. 1006].

in Johnson v. United States ("Johnson"), 576 U.S. 591 (2015), Sessions v. Dimaya ("Dimaya"), 584 U.S. 148 (2018), and United States v. Davis ("Davis"), 588 U.S. 445 (2019). See Def. Mot.  The government concedes that one of Mr. Mahdi's Section 924(c) convictions cannot stand but otherwise opposes Mr. Mahdi's motion.  See Gov't. Opp.  Upon careful consideration of the parties' papers, the consensus of relevant legal authorities, and the entire record in this case, the Court will grant Mr. Mahdi's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Mahdi "was charged with operating a narcotics distribution enterprise in northwest Washington, D.C."  United States v. Mahdi, 598 F.3d 883, 886 (D.C. Cir. 2010); see also Indictment.  On July 31, 2003, a jury convicted Mr. Mahdi on forty-eight criminal counts "involving possessing/distributing narcotics, racketeering, firearms use and possession, assault, murder, perjury and obstruction of justice."  United States v. Mahdi, 598 F.3d at 886.  As relevant here, Mr. Mahdi was convicted on six counts (Counts 27 through 32) of using and carrying a firearm during a "crime of violence" in violation of 18 U.S.C. § 924(c).  See Judgment.  The indictment charged as the predicate crime of violence various offenses under the violent crimes in aid of racketeering ("VICAR") statute, 18 U.S.C. 1959(a).  See Indictment.  A VICAR conviction requires proof that the defendant committed an underlying state or federal offense that constitutes the requisite violent crime.  See Delligatti v. United States, 604 U.S. 423, 427 (2025).  Count 27 was predicated on VICAR kidnapping, the underlying offense being kidnapping in violation of 27 Md. Code § 337.  See Indictment.  Counts 28, 29, 31, and 32 were predicated on VICAR attempted murder, the underlying offense being assault with attempt to commit any other offense in violation of D.C. Code §§ 22-403, 22-4502, 22-1805.  See

2

Indictment.  Count 30 was predicated on VICAR murder, the underlying offense being first-degree murder in violation of D.C. Code §§ 22-2101, 22-4502, 22-1805.  See Indictment.

For his crimes of conviction, Mr. Mahdi was sentenced to ten concurrent life sentences plus 132 years.  See Judgment.  The additional 132-year consecutive terms were the result of the mandatory terms required by statute for each of his six convictions under 18 U.S.C. § 924(c), as shown below:

| Count | Charge | VICAR Statute | Predicate | Sentence |
|---|---|---|---|---|
| 27 | Kidnapping in aid of racketeering (Count 7) | 18 U.S.C. § 1959(a)(1) | 27 Md. Code § 337 | Seven years, consecutive |
| 28 | Attempted murder in aid of racketeering (Count 9) | 18 U.S.C. § 1959(a)(5) | D.C. Code §§ 22-403, 22-4502, 22-1805 | Twenty-five years, consecutive |
| 29 | Attempted murder in aid of racketeering (Count 11) | 18 U.S.C. § 1959(a)(5) | D.C. Code §§ 22-403, 22-4502, 22-1805 | Twenty-five years, consecutive |
| 30 | Murder in aid of racketeering (Count 13). | 18 U.S.C. § 1959(a)(1) | D.C. Code §§ 22-2101, 22-4502, 22-1805 | Twenty-five years, consecutive |
| 31 | Attempted murder in aid of racketeering (Count 24) | 18 U.S.C. § 1959(a)(5) | D.C. Code §§ 22-403, 22-4502, 22-1805 | Twenty-five years, consecutive |
| 32 | Attempted murder in aid of racketeering (Count 26) | 18 U.S.C. § 1959(a)(5) | D.C. Code §§ 22-403, 22-4502, 22-1805 | Twenty-five years, consecutive |

See Indictment; Judgment.

On direct appeal, the D.C. Circuit affirmed Mr. Mahdi's convictions, except for a merger issue related to the counts for narcotics possession and possession with intent to distribute.  See United States v. Mahdi, 598 F.3d at 898.[2]  The Supreme Court denied Mr. Mahdi's petition for a writ of certiorari.  See Mahdi v. United States, 562 U.S. 971 (2010).

---

[2]     The D.C. Circuit vacated Mr. Mahdi's conviction "on two counts of distribution of a controlled substance (cocaine base) and four counts of possessing with intent to distribute

In October 2011, Mr. Mahdi filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, asserting, among other things, ineffective assistance of counsel, prosecutorial misconduct, and constitutional and statutory violations caused by the prosecutor's charging decisions.  See Def. Mot. to Vac.  In November 2013, Judge Ellen Segal Huvelle, who was then presiding over this case, denied most of Mr. Mahdi's claims but determined that an evidentiary hearing was required to resolve his claim of ineffective assistance of counsel.  See Mem. Op. 1.[3]  After appointing counsel and conducting an evidentiary hearing, Judge Huvelle denied Mr. Mahdi's motion on the merits.  See Mem. Op. 2.  Both this Court and the D.C. Circuit denied Mr. Mahdi's application for a certificate of appealability.  See id.; Clerk's Order, United States v. Mahdi, No. 16-3026 (D.C. Cir. Dec. 30, 2016).

In June 2016, Mr. Mahdi petitioned the D.C. Circuit for leave to file a second or successive motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  See Petition, In re Abdur R. Mahdi, No. 16-3075 (D.C. Cir. June 24, 2016); see also 28 U.S.C. § 2255(h) ("A second or successive [Section 2255] motion must be certified . . . by a panel of the appropriate court of appeals . . . .").  After Mr. Mahdi failed to pay a docketing fee or file a motion to proceed in forma pauperis, the court of appeals dismissed his appeal for lack of prosecution.  See Clerk's Order, In re Abdur R. Mahdi, No. 16-3075 (D.C. Cir. Nov. 8, 2016).

In April 2018, Mr. Mahdi filed a second pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, this time asserting ineffective assistance of habeas

---

(PWID) a controlled substance (cocaine, cocaine base and marijuana), which together merge into six corresponding counts of distribution and PWID within 1,000 feet of a school."  Mahdi, 598 F.3d at 886.

[3]     Judge Huvelle was responsible for this case until she retired from the Court.  The case was reassigned to the undersigned on September 10, 2020.

4

counsel.  See Second Def. Mot. to Vac.  Concluding that the motion was in substance a second or successive habeas petition that the D.C. Circuit had not authorized, Judge Huvelle held that the Court lacked jurisdiction to decide the motion.  See Mem. Op. 3.

In April 2019, Mr. Mahdi applied to the D.C. Circuit for leave to file a second or successive motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  See Petition, In re Abdur R. Mahdi, No. 19-3038 (D.C. Cir. May 15, 2019).  The court of appeals granted that motion in March 2020.  See D.C. Cir. Order.  On April 12, 2022, Mr. Mahdi, through counsel, filed a supplement to his Section 2255 motion.  See Def. Mot.  In his motion and supplement, Mr. Mahdi argues that his Section 924(c) convictions cannot stand because the predicate offenses for those convictions are not "crimes of violence" in light of the Supreme Court's decisions in Johnson, Dimaya, and Davis.  See Def. Mot. at 1.  The parties have fully briefed the issues, and Mr. Mahdi's Section 2255 motion is now ripe for decision.

## II. LEGAL STANDARD

A federal prisoner may move to vacate, set aside, or correct a sentence if he believes that the sentence was imposed, among other things, "in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(a).  As the movant, Mr. Mahdi "bears the burden of establishing a denial of constitutional rights by a preponderance of the evidence."  United States v. Clark, 382 F. Supp. 3d 1, 27 (D.D.C. 2019) (citing Daniels v. United States, 532 U.S. 374, 381-82 (2001)).  Upon determining that a sentence has been imposed unlawfully, the Court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  United States v. Cross, 256 F. Supp. 3d 46, 47 (D.D.C. 2017) (quoting 28 U.S.C. § 2255(b)); see also United States v. Palmer, 854 F.3d 39, 49 (D.C. Cir. 2017).

Section 924(c)(1)(A) imposes mandatory minimum sentences on defendants convicted of using, carrying, or possessing a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A); see also United States v. Mejia, 502 F. Supp. 3d 387, 390 (D.D.C. 2020) ("[A] defendant commits a § 924(c)(1) offense when he commits some other crime (the 'predicate crime') and, while so doing, possesses a firearm.").  "Sentences under Section 924(c) may not run concurrently with any other sentence, including that of the underlying crime of violence or drug trafficking crime."  United States v. Smith, 104 F.4th 314, 318 (D.C. Cir. 2024).  As defined by statute, a "crime of violence" is a felony offense:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  "The first clause is known as the elements clause; the second is known as the residual clause."  St. Hubert v. United States, 140 S. Ct. 1727, 1728 n.2 (2020) (Sotomayor, J., respecting the denial of certiorari).  In 2019, the Supreme Court held that the residual clause, 18 U.S.C. § 924(c)(3)(B), was unconstitutionally vague.  Davis, 588 U.S. at 470.[4]  As a result, a crime can only qualify as a "crime of violence" if it satisfies the elements clause of Section 924(c)(3) by including, as an element, the actual, attempted, or threatened use of physical force.  See United States v. Smith, 104 F.4th at 318.

---

[4]    The Supreme Court had previously held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1)(ii), and the residual clause of 18 U.S.C. § 16, which defines a "crime of violence" for purposes of many federal statutes, were unconstitutionally vague.  See Johnson, 576 U.S. at 597; Dimya, 584 U.S. at 160-162.  In Davis, the Supreme Court noted that the clauses at issue in those two prior cases "bear more than a passing resemblance to [Section 924(c)'s] residual cause."  Davis, 588 U.S. at 451.

To determine whether an underlying crime satisfies the elements clause, courts employ a "categorical approach." See United States v. Smith, 104 F.4th at 319; see also United States v. Abu Khatallah, 316 F. Supp. 3d 207, 212 (D.D.C. 2018). Under the categorical approach, courts "ignor[e] the particular facts of the case" and instead focus solely on whether the elements of the crime of conviction necessarily involve the use, attempted use, or threatened use of physical force as defined in Section 924(c)(3)(A). Mathis v. United States ("Mathis"), 579 U.S. 500, 504 (2016); see also United States v. Smith, 104 F.4th at 319; United States v. Alazo, Criminal No. 20-0131 (ABJ), 2023 WL 8648827, at *4 (D.D.C. Dec. 14, 2023); United States v. Kennedy, 133 F.3d 53, 56 (D.C. Cir. 1998) ("A 'crime of violence' . . . [is] ordinarily designated as such by looking to the statutory definition of the crime, rather than the evidence presented to prove it."). Because Section 924(c)(3)'s elements clause focuses on the legal "elements" of the underlying crime, not an individual's conduct in committing the crime, it "precludes . . . an inquiry into how any particular defendant may commit the crime." United States v. Taylor, 596 U.S. 845, 850 (2022).

Under this approach, a court must presume that the defendant's conviction "'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." Moncrieffe v. Holder, 569 U.S. 184, 191 (2013) (alterations in original) (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)). If the least culpable conduct criminalized under the relevant statute satisfies Section 924(c)(3)'s elements clause, then the defendant's conviction is a crime of violence. See United States v. Clark, Criminal No. 10-0133 (PLF), 2024 WL 4263866, at *3 (D.D.C. Sep. 23, 2024); United States v. Duran, Criminal No. 94-0447 (PLF), 2025 WL 1094221, at *3 (D.D.C. Apr. 11, 2025).

7

III. DISCUSSION

To succeed on the merits of his Section 2255 motion, Mr. Mahdi must establish that the predicate offenses underlying his Section 924(c) convictions do not qualify as crimes of violence under Section 924(c)(3)'s elements clause.[5]  As noted above, each of Mr. Mahdi's Section 924(c) convictions was predicated on a violation of the VICAR statute.  See Indictment. "Courts generally determine whether a federal VICAR count is a 'crime of violence' based on whether the state law predicate to the VICAR conviction is a 'crime of violence.'"  United States v. Mejia, 657 F. Supp. 3d 123, 135 (D.D.C. 2023); see Delligatti v. United States, 604 U.S. at 433 (considering whether New York second-degree murder, upon which the defendant's VICAR conviction was based, qualified as a crime of violence under Section 924(c)'s elements clause). The question therefore is whether the state law offenses underlying Mr. Mahdi's VICAR convictions are crimes of violence under the elements clause.

### A.  Maryland Kidnapping

Mr. Mahdi argues that his Section 924(c) conviction on Count 27 must be vacated because the predicate offense of Maryland kidnapping in violation of 27 Md. Code § 377 does not qualify as a crime of violence.  See Def. Mot. at 8-10.  The government concedes that "the then-existing version of 27 Md. Code § 337 fails to qualify as a categorical crime of violence under the elements clause."  Gov't Opp. at 10.[6]  Kidnapping under Maryland law is not a

---

[5]     The government does not dispute that Mr. Mahdi's motion is timely under 28 U.S.C. § 2255(f)(3) and that it satisfies the requirements for a second or successive motion under 28 U.S.C. § 2255(h).  See generally Gov't Opp.

[6]     In 2002, Section 377 was recodified as Md. Code, Criminal Law § 3-502. See 2002 Md. Laws ch. 26, § 2. That recodification did not result in a "substantive change" to the kidnapping provision.  Md. Code, Criminal Law § 3-502 note.

categorical crime of violence because it can be accomplished based on either "forcible" or "[f]raudulent carrying," the latter of which does not involve the use or attempted use of force. Tate v. State, 363 A.2d 622, 625 (Md. Ct. Spec. App. 1976); see Schrader v. State, 268 A.2d 257, 259 (Md. Ct. Spec. App. 1970) (upholding a Maryland kidnapping conviction where the victims "voluntarily entered the car used in their abduction"); cf. United States v. Clark, Criminal No. 10-0133 (PLF), 2024 WL 4263866, at *4 (D.D.C. Sep. 23, 2024) (holding that kidnapping under the federal kidnapping statute does not qualify as a crime of violence under the elements clause).  The Court therefore will vacate Mr. Mahdi's Section 924(c) conviction on Count 27.

### B.  D.C. Assault with Intent to Commit Any Other Offense

Mr. Mahdi argues that his Section 924(c) convictions on Counts 28, 29, 31, and 32 must be vacated because the predicate offense of assault with intent to commit any other offense in violation of D.C. Code § 22-403 is not a categorical crime of violence.  See Def. Mot. at 20.[7]  At the time of Mr. Mahdi's convictions, D.C. Code § 22-403 provided:

> Whoever assaults another with intent to commit any other offense which may be punished by imprisonment in the penitentiary shall be imprisoned not more than 5 years.

D.C. Code § 22-403.[8]

---

[7]    Although the indictment describes the state predicate offense as "assault with intent to murder," see Indictment at 35-36, 38, 40, Mr. Mahdi rightly points out that D.C. Code § 22-403 is entitled, "Assault with intent to commit any other offense," see D.C. Code § 22-403; see also Def. Mot. at 20.  "Assault with intent to kill" is a separate offense under D.C. law.  See D.C. Code § 22-401.

[8]    Section 22-403 was amended in 2013 to add a monetary penalty provision. See 60 D.C. Reg. 2064 (June 11, 2013).

While not conceding that the predicate offense is not a categorical crime of violence, the government asks the Court to use the modified categorical approach—rather than the categorical approach—to determine whether the offense outlined in D.C. Code § 22-403 is a crime of violence. See Gov't Opp. at 16-18. Courts apply the modified categorical approach in a "narrow range of cases" where the statute defining the predicate offense is "divisible." Descamps v. United States, 570 U.S. 254, 261-62 (2013) (citation modified). A "divisible" statute is one that "comprises multiple, alternative versions of the crime" or, in other words, "lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'" Id. at 262, 264 (alteration in original) (quoting Nijhawan v. Holder, 557 U.S. 29, 41 (2009)). The modified categorical approach permits a court to look at a "limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." Mathis, 579 U.S. at 505-06; see also United States v. Redrick ("Redrick"), 841 F.3d 478, 482 (D.C. Cir. 2016).

But the Supreme Court has made clear that not every alternatively phrased statute is divisible. The Supreme Court has explained: while a divisible statute "lists multiple elements disjunctively," an indivisible statute may "enumerate[] various factual means of committing a single element." Mathis, 579 U.S. at 506. The key difference is that an indivisible statute "spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item." Id. When faced with an "alternatively phrased statute," a court's "first task" is "to determine whether its listed items are elements or means." Id. at 517. If the listed items are elements, the statute is divisible; if they are means, the statute is indivisible. See id.

In Mathis, the Supreme Court provided courts with guidance to discern whether a statute identifies alternative elements or merely alternative means. See Mathis, 579 U.S.

10

at 517-19.  First, if a state court has definitively answered the elements-versus-means question, the sentencing court should follow the state court's direction.  Id. at 517-18.  Second, the court should look to the statute on its face to determine whether the "statutory alternatives carry different punishments."  Id. at 518.  If they do, then under Supreme Court precedent the alternatives "must be elements."  Id. (citing Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).  Third, the court should determine whether the statute "identif[ies] which things must be charged (and so are elements) and which need not be (and so are means)."  Id.  And fourth, "if state law fails to provide clear answers," the court then—and only then—can "'peek at the [record] documents' . . . for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.'"  Id. (second alteration added) (quoting Rendon v. Holder, 782 F.3d 466, 473-74 (9th Cir. 2015) (Kozinski, J., dissenting from denial of rehearing en banc)).

The government argues that applying the guidance of the Supreme Court in Mathis leads to the conclusion that D.C. Code § 22-403 is divisible.  See Gov't Opp. at 16-17; (citing Mathis, 579 U.S. at 517-19).  Specifically, the government urges the Court to "peek at the record documents" pursuant to the fourth Mathis consideration.  Mathis, 579 U.S. at 518 (citation modified); see Gov't Opp. at 16-17.  In the government's view, "[t]hat peek shows that D.C. Code § 22-403 is divisible as to the 'other offense'" and that Mr. Mahdi was charged with the specific offense of assault with intent to murder.  Gov't Opp. at 17.

The government's argument misunderstands the relevant inquiry.  As described above, a court must determine whether a statute is divisible only when the statute is "alternatively phrased."  Mathis, 579 U.S. at 517.  Here, the government concedes that D.C. Code § 22-403 "does not list any alternatives whatsoever."  Gov't Opp. at 16; see Mathis, 579 U.S. at 517.  The Court thus has no occasion to "peek at the record documents" to determine

11

"whether the listed items are elements of the offense." Id. at 518 (citation modified).  D.C. Code § 22-403 instead "sets out a single . . . set of elements to define a single crime." Mathis, 579 U.S. at 504-05.  The Court therefore must apply the categorical approach and decide whether the elements of that crime necessarily involve the use of force.  See Descamps v. United States, 570 U.S. at 258 ("[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements.").

The crime of assault with intent to commit any other offense under the D.C. Code contains two elements: (1) "assault[ing] another" and (2) "intent to commit any other offense." D.C. Code § 22-403.  The parties agree that the first element—assault—can be completed without the use or attempted use of force.  See Def. Mot. at 20-21; Gov't Opp. at 18-19 (recognizing that assault "in isolation, and as the D.C. courts have defined it[,] may not require the use, attempted use, or threatened use of violent force").  That is because D.C. assault "may be carried out through the mere use of a menacing threat." See United States v. Butler, 253 F. Supp. 3d 133, 144 (D.D.C. 2017).

The second element—intent to commit any other offense—also can be completed absent force.  That is because many criminal offenses under D.C. law do not require the use or attempted use of force.  See Def. Mot. at 21-22.  For example, trademark counterfeiting under D.C. law is committed by one who "willfully manufactures, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute any items, or services bearing or identified by a counterfeit mark." D.C. Code § 22-902.  Voyeurism under D.C. law is committed by one who, among other things, "electronically record[s]" a person who is using the bathroom or changing clothes without that person's consent.  D.C. Code § 22-3531(c).  Neither of these offenses is violent.  See United States v. Singleton, 252 F. Supp. 3d 423, 430 (E.D. Pa. 2017)

12

(analyzing a Pennsylvania robbery statute that prohibits theft while committing "any felony of the first or second degree" and noting that "the government concedes (as it must) that [the statutory provision] does not require force, because some first- and second-degree felonies are nonviolent").

For these reasons, the Court must agree with Mr. Mahdi that D.C. assault with intent to commit any other offense is not a crime of violence under the elements clause of Section 924(c).  The Court therefore will vacate Mr. Mahdi's convictions under Counts 28, 29, 31, and 32.

### C.  D.C. Murder in the First Degree

Turning to Count 30, Mr. Mahdi argues that his Section 924(c) conviction on that count must be vacated because the predicate offense of first-degree murder is not a categorical crime of violence under the D.C. Code.  See Def. Mot. at 10.  D.C. Code § 22-2101 reads in relevant part:

> Whoever, being of sound memory and discretion, kills another purposely, either of deliberate and premeditated malice or by means of poison, or in perpetrating or attempting to perpetrate an offense punishable by imprisonment in the penitentiary, or without purpose to do so kills another in perpetrating or in attempting to perpetrate any arson, as defined in § 22-301 or § 22-302, first degree sexual abuse, first degree child sexual abuse, first degree cruelty to children, mayhem, robbery, or kidnaping, or in perpetrating or attempting to perpetrate any housebreaking while armed with or using a dangerous weapon, or in perpetrating or attempting to perpetrate a felony involving a controlled substance, is guilty of murder in the first degree.

D.C. Code § 22-2101.

Unlike D.C. Code § 22-403 discussed above, D.C. Code § 22-2101 is "an alternatively phrased statute."  Mathis, 579 U.S. at 517.  The statute contains three parts: a person commits first-degree murder by killing another (1) "purposely, either of deliberate and

13

premeditated malice"; or (2) "purposely . . . in perpetrating or attempting to perpetrate" a felony;

or (3) "without purpose" while perpetrating or attempting to perpetrate an enumerated felony.

D.C. Code § 22-2101.  The Court's "first task . . . is thus to determine whether [the statute's]

listed items are elements or means."  Mathis, 579 U.S. at 517.

### 1. Divisibility Analysis: Elements or Means

To resolve the question of elements versus means, the Court looks to state law.

See Mathis, 579 U.S. at 517-18.  The Supreme Court in Mathis indicated that it will be "easy" to

determine whether a state statute lists elements of different crimes or means to commit a single

crime when "a state court decision definitively answers the question."  Id. at 517.  "When a

ruling of that kind exists, a sentencing judge need only follow what it says."  Id. at 518; see

Schad v. Arizona, 501 U.S. 624, 636 (1991) (plurality opinion) ("If a State's courts have

determined that certain statutory alternatives are mere means of committing a single offense,

rather than independent elements of the crime, we simply are not at liberty to ignore that

determination and conclude that the alternatives are, in fact, independent elements under state

law.").  That is precisely this situation in this case.

In Byrd v. United States ("Byrd"), the D.C. Court of Appeals—D.C.'s highest

court—held that the D.C. first-degree murder statute "provides for but one offense of first-degree

murder, provable by alternative means."  Byrd, 500 A.2d 1376, 1384 (D.C. 1985), adopted en

banc, 510 A.2d 1035 (D.C. 1986).[9]  In its lengthy analysis, the court acknowledged that the

---

[9]    At least one federal court has reached a similar conclusion with respect to the federal first-degree murder statute.  See United States v. Ahemeid, Criminal No. 20-0502 (BMC), 2026 WL 318211, at *9 (E.D.N.Y. Feb. 6, 2026) (concluding that the federal first-degree murder statute is indivisible because the four variances, including felony murder, "serve only as different factual means to show" the element of "requisite atrocity").  But see United States v. Cooper, 610 F. Supp. 3d 184, 205-06 (D.D.C. 2022) (collecting cases reaching the opposite conclusion).

statute contemplates "dual states of mind—premeditation and the intent to commit a felony." Id. at 1386. But upon careful consideration of both the text and history of the statute, the court concluded that "proof of deliberate and premeditated malice and proof of killing in the course of the enumerated felonies are but alternate modes of" "proving the malice element of murder." Id. at 1384, 1386-87. In other words, although "the mental process of premeditation and deliberation differs from the commission of a felony[,] . . . the element to be proved is malice, an ultimate fact that the prosecution can establish by proving either of the foregoing." Id. at 1386. It is difficult to envision a more definitive answer to the question of elements versus means.

The government nevertheless argues that the D.C. Court of Appeals' decision in Byrd does not resolve the issue of the D.C. first-degree murder statute's divisibility because the court of appeals was addressing a double jeopardy challenge. See Gov't Opp. at 14-15. Pointing to the D.C. Circuit's opinion in Redrick, the government contends that "the D.C. Circuit has found that even where offenses are the same for double-jeopardy purposes, they may still require different elements for purposes of divisibility." Gov't Opp. at 14; see Redrick, 841 F.3d at 482-84. The Court is not persuaded, however, that the reasoning in Redrick allows the Court to disregard the D.C. Court of Appeals' definitive holding that the D.C. first-degree murder statute "provides for but one offense." Byrd, 500 A.2d at 1384.

The question before the D.C. Circuit in Redrick was whether armed robbery under Maryland law is a "violent felony" for purposes of the ACCA. See Redrick, 841 F.3d at 482-84. Prior to the defendant's conviction, Maryland's legislature had enacted two statutory provisions related to the common law offense of robbery—one that codified a maximum penalty of fifteen years' imprisonment for "robbery," and one that codified a maximum penalty of twenty years' imprisonment for "robbery with a dangerous or deadly weapon." Id. at 482-83. To the D.C.

15

Circuit, those two statutory provisions "appear[ed] to create two separate crimes." Id. at 483. Indeed, some courts in Maryland had referred "to the 'separate offenses' of armed robbery and simple robbery." Id. at 484. For example, the Court of Appeals of Maryland had said that "[a]lthough the offenses are the same for double jeopardy purposes . . . 'only the offense of robbery with a deadly weapon requires proof of an additional element.'" Id. (quoting Bynum v. State, 357 A.2d 339, 341 (Md. 1976)). Other Maryland courts, however, had "described the dangerous weapon portion of the penalty statute as a 'sentence enhancement' to the single offense of common law robbery" rather than as an element of a distinct crime. Id. at 483. To determine whether robbery and armed robbery were separate offenses, the D.C. Circuit "look[ed] beyond" labels and considered how the Maryland courts had "applied the dangerous weapon provision." Id. It concluded that Maryland courts treated that provision as setting forth an additional element—that the robbery "was committed with the use of a deadly or dangerous weapon." Id. (quoting Battle v. State, 499 A.2d 200, 203 (Md. Ct. Spec. App. 1985)).

The Court concludes that the situation presented in this case is markedly different from the one in Redrick.[10] While in Redrick, the state courts had not definitively answered the question of elements or means, here the District of Columbia's highest court has held unequivocally and after careful analysis that the D.C. first-degree murder statute sets forth "but one offense of first-degree murder, provable by alternative means." Byrd, 500 A.2d at 1384. There is no suggestion that D.C. courts have answered this question inconsistently or have

_____

[10]    It also is unlike the cases that the government cites in its brief. See Gov't Opp. at 12, 15-16. As Mr. Mahdi points out, in none of the cases the cases the government cites was there a state court decision holding that an alternatively worded state statute listed means rather than elements. See Reply at 21. The government does not identify a case in which a federal court was presented with such a state court decision and the federal court nonetheless concluded that the statute was divisible.

16

treated the statute as containing separate offenses in application.  See Redrick, 841 F.3d at 483.

Moreover, as Mr. Mahdi points out, the reason that the crimes at issue in Redrick could be "the

same for double jeopardy purposes" yet divisible for purposes of the ACCA was that robbery is a

lesser-included offense of armed robbery—that is, the two offenses analyzed there had all the

same elements except armed robbery "requires proof of an additional element."  Id. at 484

(quoting Bynum v. State, 357 A.2d at 341).  The reasoning in Byrd makes clear that felony

murder is not a lesser-included offense of premeditated murder or vice versa.  See Byrd, 500

A.2d at 1384-87.

    Contrary to the government's suggestion, the D.C. Circuit's opinion in Redrick

has little relevance to this case.  To the extent that the government suggests that a court cannot or

should not consider double jeopardy decisions as part of a divisibility analysis, that is not so.

Indeed, the D.C. Circuit recently cited a decision that rejected a double jeopardy challenge in

concluding that a federal statute was divisible for purposes of Section 924(c).  See United States

v. Khatallah, 41 F.4th 608, 632-33 (D.C. Cir. 2022).  The D.C. Circuit's analysis in Khatallah is

consistent with the practice in other circuits.  See, e.g., United States v. McKibbon, 878 F.3d 967,

975 (10th Cir. 2017) (explaining that a Colorado Supreme Court decision "specifically

addressing a double jeopardy question . . . addresses exactly th[e] question" of whether a statute

is divisible); Martinez v. Sessions, 893 F.3d 1067, 1071 (8th Cir. 2018) (relying on two cases in

which the Missouri Court of Appeals rejected double jeopardy challenges to conclude that a

Missouri statute is divisible); United States v. Racioppi, 807 F. App'x 153, 156 (3d Cir. 2020)

(rejecting the argument that "the double jeopardy test . . . 'has no bearing on the divisibility

analysis set out'" in Mathis); Simpson v. U.S. Att'y Gen., 7 F.4th 1046, 1055 (11th Cir. 2021)

("Were there any remaining doubt about whether [a Florida statute] is divisible with respect to its prohibited items, double jeopardy decisions by Florida courts put that doubt to rest.").

This Court "need only follow what" the D.C. Court of Appeals has said to conclude that premeditated murder and felony murder are alternative means to prove first-degree murder under D.C. law. Mathis, 579 U.S. at 518; see United States v. Vederoff, 914 F.3d 1238, 1247-48 (9th Cir. 2019) ("Washington courts have concluded that the [second-degree murder] statute is indivisible, and we adopt their interpretation here."). Because D.C. Code § 22-2101 is indivisible, the Court will apply the categorical approach and determine whether the least culpable conduct criminalized under the statute necessarily involves the use, attempted use, or threatened use of physical force. See Moncrieffe v. Holder, 569 U.S. at 191.

### 2. Crime of Violence Analysis

Mr. Mahdi contends that felony murder—the least culpable means of committing D.C. first-degree murder—can be accomplished without the use or attempted use of force. See Def. Mot. at 16-19. The government does not appear to disagree with that contention. See Gov't Opp. at 10. The Supreme Court has held that an offense requiring a mens rea of recklessness or any less culpable mental state cannot count as a crime of violence. See Borden v. United States, 593 U.S. 420, 423 (2021); see also United States v. West, 68 F.4th 1335, 1340 n.11 (D.C. Cir. 2023). That is so even if the conduct results in death. See United States v. Williams, 353 F. Supp. 3d 14, 21 (D.D.C. 2019) ("[O]ffenses resulting in death do not necessarily require the use of violent force."). "Felony murder cannot qualify as a 'crime of violence' because it requires only the mens rea necessary to attempt or complete the underlying felony." United States v. Jackson, 32 F.4th 278, 285 (4th Cir. 2022); see also United States v. States, 72 F.4th 778, 791 n.11 (7th Cir. 2023). For some felonies, "[t]hat mens rea is not more than recklessness and thus,

18

does not satisfy <u>Borden</u>." <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>Lewis v. United States</u>, 10 A.3d 646, 658 (D.C. 2010) ("[T]o convict a defendant of arson [under D.C. law], the government must prove his maliciousness by introducing sufficient evidence that he acted in conscious disregard of a known and substantial risk that his actions would endanger human life.").

Because it cannot meaningfully be disputed that D.C. first-degree felony murder does not qualify as a crime of violence, D.C. first-degree murder cannot qualify as a categorical crime of violence under Section 924(c)'s elements clause. The Court therefore will vacate Mr. Mahdi's conviction under Count 30.

### D. Remedy

Finally, Mr. Mahdi argues that if he is successful on the merits, he should receive a full resentencing. <u>See</u> Def. Opp. at 26. Section 2255 permits a district court to take one of four options in remedying a defendant's unlawful sentence: "[1] discharge the prisoner or [2] resentence him or [3] grant a new trial or [4] correct the sentence as may appear appropriate." 28 U.S.C. § 2255; <u>see</u> <u>United States v. Palmer</u>, 854 F.3d at 49 ("Section 2255(b) accords [the district court] discretion in choosing from among four remedies, 'as may appear appropriate.'"). Exercising its discretion under Section 2255(b), the Court concludes that a full resentencing is not necessary. It will correct Mr. Mahdi's sentence by vacating the term of 132 years' incarceration imposed consecutively for the six Section 924(c) counts.

Mr. Mahdi offers four reasons why a full resentencing is necessary, none of which is persuasive. First, Mr. Mahdi asserts that the practice of "stacking" Section 924(c) convictions, which led to the imposition of a 132-year sentence and has since been eliminated, justifies a full resentencing. <u>See</u> Def. Mot. at 27. Mr. Mahdi is correct that beginning in December 2018, the government was no longer able to invoke Section 924(c)'s enhanced mandatory consecutive

19

sentences for "second or successive" convictions in the same case in which the first such conviction was obtained. See First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, at § 403 (Dec. 21, 2018). Contrary to Mr. Mahdi's suggestion, however, that change does not require a full resentencing. Rather, the vacatur of his 132-year sentence that resulted from the "stacking" of his convictions directly addresses the harm to him arising from that condemned practice. Indeed, Mr. Mahdi appears to concede that if the Court vacated each of his Section 924(c) convictions and the resulting 132-year term of imprisonment, he would be placed "in exactly the same position in which he would have been had there been no error in the first place." Reply at 28.

Second, Mr. Mahdi asserts that he likely is eligible for a sentence reduction under the First Step Act because he was convicted of several crack cocaine offenses, and he contends that "a full resentencing hearing would allow the Court to correct all of these issues at once." Def. Mot. at 27. But Mr. Mahdi has not briefed the sentence reduction issue or otherwise supported his assertion that he is entitled to a resentencing under the First Step Act. Moreover, Mr. Mahdi has succeeded in collaterally attacking six of his counts of conviction, and the basis for that successful challenge has nothing to do with his convictions for the crack cocaine offenses. The identified error thus can be remedied without revisiting Mr. Mahdi's convictions for those offenses.

Third, Mr. Mahdi states that the "sentencing package doctrine" supports granting him a full resentencing hearing. See Def. Mot. at 27. Under the sentencing package doctrine, "at least in some instances, sentences on multiple counts may comprise a 'sentencing package,' so that attacking the sentence on some counts . . . reopens the sentence on the other counts as well." United States v. Smith, 605 F. Supp. 3d 1, 25 (D.D.C. 2022) (alteration in original)

(quoting United States v. Townsend, 178 F.3d 558, 567 (D.C. Cir. 1999)), aff'd, 104 F.4th 314 (D.C. Cir. 2024).  "This doctrine has developed in recognition of the fact that 'when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan.'"  Id. (quoting United States v. Townsend, 178 F.3d at 567).  But "not every judgment involving multiple convictions presents a sentencing package in which vacating the sentence on one count unravels the remaining sentences."  United States v. Palmer, 854 F.3d at 49.  When the determinations of multiple sentences are "in no way interdependent," the sentences may not be reviewed as an aggregate, and the "sentencing package doctrine . . . affords no apparent basis for any resentencing on the other counts" not challenged.  United States v. Smith, 467 F.3d 785, 790 (D.C. Cir. 2006).

Here, the record reflects that Mr. Mahdi's Section 924(c) convictions were not part of a "single package" with his remaining convictions.  At the time Mr. Mahdi's sentence was handed down, the sentencing court was required by statute and the then-mandatory Sentencing Guidelines to impose life sentences for several of his crimes, including murder in aid of racketeering.  See 18 U.S.C. § 1959(a).  Separately, Mr. Mahdi's Section 924(c) sentences were required by statute to run consecutively to his sentences on all other convictions, including his life sentences.  See 18 U.S.C. § 924(c)(1)(D).  There simply is "no indicia of interdependence between the [Section] 924(c) convictions" and any other conviction.  United States v. Smith, 605 F. Supp. 3d at 27.  Indeed, the D.C. Circuit has held the sentencing package doctrine inapplicable in nearly identical circumstances.  See United States v. Smith, 104 F.4th at 334.

21

Fourth and finally, Mr. Mahdi argues that he is entitled to resentencing because "most of [his] criminal conduct in this case took place when he was in his early twenties" and at the time of his sentencing, a defendant's age generally was not considered as a mitigating factor. Def. Mot. at 29. Mr. Mahdi is correct that if he had been sentenced for the first time today, his age could have been considered under the statutory sentencing factors. But "that intervening change in the law does not entitle non-juvenile federal defendants who were convicted as young men and women to resentencing[] solely so that their ages can be taken into account." United States v. Johnson, Criminal No. 98-71-1 (BAH), 2023 WL 4234651, at *20 (D.D.C. June 28, 2023). And again, the basis for Mr. Mahdi's successful Section 2255 motion is unrelated to the age at which he committed his crimes. The identified error therefore can be rectified with a straightforward sentence correction. See id.

## IV. CONCLUSION

For the reasons set forth in this Opinion, the Court will grant Mr. Mahdi's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 [Dkt. No. 966], as amended by his Supplemental Motion to Vacate Judgment Under 28 U.S.C. § 2255 Based on Johnson, Dimaya, and Davis [Dkt. No. 979]. An Order consistent with this Opinion will issue this same day.

PAUL L. FRIEDMAN
United States District Judge

DATE: 3|24|26

22